**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Holding a Criminal Term
Grand Jury Sworn in on May 7, 2012

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| v. | : | **VIOLATIONS:** |
| | : | |
| **OMIDREZA KHADEMI, and** | : | 18 U.S.C. § 371 |
| | : | (Conspiracy) |
| **OMID GENERAL TRADING COMPANY LLC** | : | |
| | : | 50 U.S.C. § 1705 |
| Defendants. | : | (International Emergency |
| | : | Economic Powers Act Violation) |
| | : | |
| | : | 31 C.F.R. Part 560 |
| | : | (Iranian Transaction Regulations) |
| | : | |
| | : | |
| | : | 18 U.S.C. § 2 |
| | : |  (Aiding and Abetting) |
| | : | |
| | : | 18 U.S.C. § 981(a)(1)(c) |
| | : | 28 U.S.C. § 2461(c) |
| | : | (Criminal Forfeiture) |

**INDICTMENT**

The Grand Jury charges that:

**COUNT ONE**

At all times material to this Indictment:

INTRODUCTION

1.      Defendant OMIDREZA KHADEMI, (hereinafter "KHADEMI"), was an Iranian citizen residing in the United Arab Emirates. Defendant KHADEMI was the owner and managing director of Defendant OMID GENERAL TRADING COMPANY LLC. As part of his responsibilities, Defendant KHADEMI procured U.S.-origin goods for Iranian customers.

2.	Defendant OMID GENERAL TRADING COMPANY LLC was a company which arranged for the transshipment of goods through third countries to Iran on behalf of Iranian customers.  Defendant OMID GENERAL TRADING COMPANY LLC listed its address as P.O. Box 43266, Dubai, U.A.E.

### The International Emergency Economic Powers Act and the Iranian Transactions Regulations

3.	The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, authorized the President of the United States ("the President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the U.S. when the President declared a national emergency with respect to that threat.  Pursuant to the authority under the IEEPA, the President and the executive branch have issued orders and regulations governing and prohibiting certain transactions with Iran by U.S. persons or involving goods from the United States.

4.	Beginning with Executive Order No. 12170, issued on November 14, 1979, the President has found that "the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and declare[d] a national emergency to deal with that threat."

5.	On May 6, 1995, the President issued Executive Order No. 12959, adopting and continuing Executive Order No. 12170 (collectively, the "Executive Orders"), and prohibiting, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the U.S. or by a U.S. person.  The Executive Orders authorized the U.S. Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders.  Pursuant to this authority, the Secretary of the Treasury

promulgated the Iranian Transactions Regulations ("ITR"), implementing the sanctions imposed by the Executive Orders.

6. The ITR generally prohibit any person from exporting or causing to be exported from the U.S. any goods or technology without having first obtained an export license from the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC"), which is located in the District of Columbia. The ITR imposed, among others, the following prohibitions:

> Section 560.203 - Prohibition of any Transaction to Evade or Avoid the Embargo and any Attempt to Violate the Embargo:
>
> Any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in this part is hereby prohibited.
>
> Section 560.204 - Prohibition of any Sale or Supply of any Goods, Technology, Services to Iran or the Iranian Government:
>
> Except as otherwise authorized [by a license issued by OFAC], the exportation, . . . sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited, including the exportation, . . . sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that:
>
> (a) Such goods, technology, or services are intended specifically for supply . . . directly or indirectly, to Iran or the Government of Iran . . .
>
> Section 560.205 – Prohibited reexportation of goods, technology or services to Iran or the Government of Iran by persons other than United States persons;
>
> Except as otherwise authorized pursuant to this part . . . the reexportation from a third country, directly or indirectly, by a person other than a United States person is prohibited if:

      (1) Undertaken with knowledge or reason to know that the reexportation is intended specifically for Iran or the Government of Iran; and

      (2) The exportation of such goods, technology, or services from the United States to Iran was subject to export license application requirements under any United States regulations in effect on May 6, 1995, or thereafter is made subject to such requirements imposed independently of this part.

7. The Iran Trade Embargo and the ITR were in effect at all times relevant to this Indictment.

8. At no time did the defendants OMIDREZA KHADEMI or OMID GENERAL TRADING COMPANY LLC receive or possess a license or authorization from the Office of Foreign Assets Control, located in the District of Columbia, to export goods, technology, or services, of any description, to Iran.

## B. THE CONSPIRACY

9. Beginning as early as in or about February 24, 2010, the exact date being unknown to the Grand Jury, and continuing through in or around September 2011, in the District of Columbia and elsewhere, defendants OMIDREZA KHADEMI and OMID GENERAL TRADING COMPANY LLC did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to (a) commit an offense against the United States, that is, to export and cause the exportation of goods from the United States to Iran in violation of the prohibitions imposed upon that country by the United States, without having first obtained the required licenses from the Office of Foreign Assets Control, United States Department of the Treasury, located in the District of Columbia, in violation of Title 50, United States Code, Section 1705, and Title 31, Code of Federal Regulations, Parts

560.203 and 560.204; and (b) defraud the United States government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations relating to the export or supply of goods from the United States, by deceit, craft, trickery, and dishonest means, in violation of Title 18, United States Code, Section 371.

10. Known members of the conspiracy included the following individuals: (1) an Iranian citizen, businessman, and owner of Company A, an Iranian supply company ("co-conspirator A"), and (2) an Iranian citizen who owns and operates Company B, another Iranian supply company ("co-conspirator B"). Both Company A and Company B were listed by the European Union on May 23, 2011, as entities involved in the procurement of components for the Iranian nuclear program.

11. The conduct alleged in this Count began outside of the jurisdiction of any particular State or district, and later occurred within the District of Columbia and elsewhere, and is therefore within the venue of the United States District Court for the District of Columbia pursuant to Title 18, United States Code, Sections 3237(a) and 3238.

## OBJECTS OF THE CONSPIRACY

12. The objects of the conspiracy were:

    A. to acquire U.S.-origin goods from the United States to supply to entities in Iran;

    B. to conceal from United States companies and the United States government that the U.S.-origin goods were destined for Iranian end-users so as to avoid penalties and disruption of the illegal activity;

   C. to make a financial profit for defendant KHADEMI and his co-conspirators; and

   D. to evade the prohibitions and licensing requirements of IEEPA and the Iranian Transactions Regulations.

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

 13. The manner and means by which the defendants and their co-conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

   A. Defendant KHADEMI and other conspirators began planning and acting outside of the United States to acquire goods from inside the United States.

   B. Defendant KHADEMI and other conspirators used e-mail accounts and other forms of communication to communicate with one another and with other individuals located in the United States and Iran.

   C. Defendant KHADEMI and other conspirators used companies outside of Iran to solicit purchase orders for U.S.-origin goods to companies located in the United States on behalf of other conspirators and customers in Iran.

   D. Defendant KHADEMI and other conspirators used false names and companies to place orders and purchase U.S.-origin goods from companies located in the United States.

   E. Defendant KHADEMI and other conspirators used companies outside of Iran, including defendant OMID GENERAL TRADING COMPANY LLC, to transship goods from the United States through third countries, including Hong Kong, to Iran.

F.	Defendant KHADEMI and other conspirators intentionally concealed from companies, shippers, and freight forwarders located in the United States the ultimate end-use and end-users of the purchased U.S.-origin goods.

G.	Defendant KHADEMI and other conspirators caused the U.S.-origin goods to be exported from the United States to individuals and entities in Iran without obtaining a license from the Office of Foreign Assets Controls, United States Department of the Treasury, located in the District of Columbia.

## OVERT ACTS

14.	In furtherance of this conspiracy, and to accomplish its purposes and objects, at least one of the conspirators committed or caused to be committed, in the District of Columbia, and elsewhere, at least one of the following overt acts, among others:

(1) On or about February 24, 2010, defendant KHADEMI gave co-conspirator A the name of a company and its address in Hong Kong, hereinafter "Hong Kong Company," to use for the transhipment of goods to Iran.

(2) Sometime in August 2010, defendant KHADEMI had a conversation with co-conspirator B regarding defendant KHADEMI reaching out to a French company in order to try to acquire a PCI Express Analog Input Board, breakout board and cables from a French company for co-conspirators A and B.

(3) On or about August 21, 2010, defendant Khademi sent an email to co-conspirator A, requesting more information about the use of the parts in order to speak to the French company, and on that same day, co-conspirator A replied, "We have not informed the supplier that we are using them in Iran, just tell them it's for a research center in UAE for

7

analyzing light spectrum, this is the best answer.  In iran [sic] these items will be used for Tehran University Computer lab."

(4) On August 24, 2010, co-conspirator A sent an email to defendant KHADEMI, informing him that there was no need for him to contact the French company because they were switching to a different supplier.

(5) On or about September 9, 2010, co-conspirator A, using a false name, caused an Alabama company to ship a PCI Express Analog Input Board, breakout board and cables to the Hong Kong company previously provided by defendant KHADEMI.

(6) On or about September 9, 2010, co-conspirator A forwarded his email correspondence with the Alabama company to defendant KHADEMI, stating "Another load is shipped to HK, please be informed."

(7) On or about September 12, 2010, co-conspirator A sent an email to defendant KHADEMI, directing him to send the PCI Express Analog Input Board, breakout board and cables to co-conspirator A's attention at Company B in Tehran, Iran.

(8) On or about September 18, 2010, defendant KHADEMI caused the Hong Kong Company to ship the PCI Express Analog Input Board, breakout board and cables from Hong Kong to co-conspirator A in Iran.

(9) On or about September 21, 2010, co-conspirator A sent an email to defendant KHADEMI, informing him, "for your information a shipment of 70,429$ which is 21pcs of laptop is ready in US for shipment and we want to ship it HK.  And we will not wait for any thing to mix with it and you can immediately ship to Iran."

(10) On or about October 5, 2010, co-conspirator A caused a California company to ship 21 rugged laptop computers to the Hong Kong company previously provided by defendant KHADEMI.

(11) On or about November 24, 2010, defendant KHADEMI caused the 21 rugged laptop computers to be shipped from Hong Kong Company to Co-conspirators A and B in Iran.

(12) On or about August 29, 2011, co-conspirator A sent an email to defendant KHADEMI, stating "Please find attached file as a shipment which is being shipped to HK." The attached files consisted of a commercial invoice and a packing slip for a Side Scan System and related equipment from a company in the U.A.E. Each indicated "Country of Origin: USA." A Side Scan System was a small portable scan sonar system that was suitable for towing by small water craft and provided high resolution images.

(13) Some time after August 30, 2011, defendant KHADEMI caused the Side Scan System to be shipped from Hong Kong Company to Co-conspirator A in Tehran, Iran, at the address of Company B.

(14) On or about September 8, 2011, co-conspirator A, using a false name, caused a Ohio company to ship an underwater acoustic transducer to the Hong Kong company previously provided by defendant KHADEMI. On that same day, co-conspirator A forwarded his email correspondence with the Ohio company to defendant KHADEMI, stating "Attached item is also sent to HK by UPS, please ask them to mix with the previous one and ship together to iran[sic]," and sending the UPS tracking number.

(15) On or about September 11, 2011, defendant KHADEMI responded to co-conspirator A, stating that the shipments could not be joined, and requesting the invoice and

consignee details for the underwater acoustic transducer. On that same day, co-conspirator A responded, giving defendant KHADEMI the Tehran Iran address of Company B. The transducer was designed for military and scientific applications in an underwater environment.

(16) Some time after September 14, 2011, defendant KHADEMI caused the transducer to be shipped from Hong Kong to Company B in Iran.

> (**Conspiracy to Unlawfully Export U.S. Goods to Iran and to Defraud the United States and the U.S. Department of the Treasury**, in violation of Title 18, United States Code, Section 371)

## COUNTS TWO THROUGH FIVE

### (Exports to Embargoed Country)

15.     The allegations in Paragraphs 1 through 8 and 10 through 14 are incorporated and re-alleged by reference in this Count.

16.     On or about the dates listed as to each count below, in the District of Columbia, and elsewhere, the defendants, OMIDREZA KHADEMI and OMID GENERAL TRADING COMPANY LLC did knowingly and willfully violate the embargo against Iran by attempting to cause and causing to be exported and reexported from the U.S. various products, as described more fully in Counts 2 through 5, from the U.S. to Iran via Hong Kong, without first having obtained the required authorizations from the U.S. Department of the Treasury's Office of Foreign Assets Control, located in the District of Columbia:

| **COUNT** | **DATE** | **ITEM DESCRIPTION** | **DESTINATION** |
|---|---|---|---|
| 2 | September 9, 2010 | PCI Express Analog Input Board and related Breakout Board and Cables | Iran |
| 3 | October 5, 2010 | Laptop Computers | Iran |
| 4 | July 20, 2011 | Side Scan System | Iran |
| 5 | September 8, 2011 | Underwater Acoustic Transducer | Iran |

(**Unlawful Exports of U.S.-Origin Goods to Iran**, in violation of Title 50, United States Code, Section 1705; Title 31, Code of Federal Regulations, Sections 560.203, 560.204, and 560.205; **Aiding and Abetting and Causing an Act to be Done**, in violation of Title 18, United States Code, Section 2)

FORFEITURE ALLEGATIONS
(As to Counts One through Five)

17.     The violations alleged in Count One through Count Five of this Indictment are re-alleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

18.     Upon conviction of one or more of the offenses alleged in Counts One through Five of this Indictment, the government will seek from defendants, OMIDREZA KHADEMI and OMID GENERAL TRADING COMPANY LLC, forfeiture of any and all property, real or personal, which constitutes or is derived from proceeds traceable to the offense of Conspiracy to Unlawfully Export U.S. Goods to Iran and to Defraud the United States, in violation of Title 18, United States Code, Section 371; Title 50, United States Code, Section 1705; and Title 31, Code of Federal Regulations, Part 560.  The government also will seek a money judgement for a sum of

11

money equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offense alleged in Counts One through Five of this Indictment.

### Substitute Assets Provision

19. If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants:

    (1) cannot be located upon the exercise of due diligence;

    (2) has been transferred or sold to, or deposited with, a third party;

    (3) has been placed beyond the jurisdiction of the court;

    (4) has been substantially diminished in value; or

    (5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of said property listed above as being subject to forfeiture.

(**Criminal Forfeiture**, in violation of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c))

A TRUE BILL


FOREPERSON



Attorney of the United States in
and for the District of Columbia